Norm COLEMAN, et al., Petitioners,

v.

Mark RITCHIE, Minnesota Secretary of State, The Minnesota State Canvassing Board, Isanti County Canvassing Board, et al., Respondents,

Al Franken for Senate and Al Franken, Intervenor–Respondents.

No. A08–2169.

Supreme Court of Minnesota.

Jan. 5, 2009.

48

## ORDER

On December 15, 2008, petitioners Norm Coleman, et al., filed a petition and amended petition under Minn.Stat. § 204B.44 (2006) concerning the election for United States Senator from Minnesota held on November 4, 2008. Petitioners asked the court to order, among other things, that no rejected absentee ballots be counted in the pending administrative recount and that all issues related to such ballots are to be raised, if any party so chooses, in an election contest under Minn.Stat. ch. 209 (2006).

By order filed on December 18, 2008, we granted in part and denied in part the petition. In particular, we ordered candidates Norm Coleman and Al Franken and their campaign representatives, the Secretary of State, and all county auditors and canvassing boards to establish and implement a process, as expeditiously as practicable, for the purpose of identifying all absentee ballot envelopes that the local election officials and the candidates agree were rejected in error. We further ordered local election officials to identify for the candidates' review those previously rejected absentee ballot envelopes that were not rejected on any of the four bases stated in Minn.Stat. § 203B.12 (2006), or in Minn.Stat. § 203B.24 (2006) for overseas absentee ballots. By order filed on December 24, 2008, on the joint motion of the candidates, the Secretary of State, and local election officials, we modified our December 18 order to provide that any absentee ballot return envelopes that local election officials and the candidates agree were rejected in error be delivered to the Secretary of State, no later than January 2, 2009, to be opened and counted, such count to be completed by January 4, 2009.

Late in the day on December 31, 2008, petitioners filed a motion for an emergency order: (a) directing local election officials to segregate and convey to the Secretary of State's office all rejected absentee ballot envelopes, together with the related applications and any other relevant documentation, that have been identified either by petitioners, by intervenor-respondents Al Franken and the Al Franken for Senate campaign, or by local election officials as having been improperly rejected; and (b) directing the Secretary of State, together with representatives of the Coleman and Franken campaigns, to review the ballot envelopes and other relevant documentation to determine whether they agree that such ballots were in fact wrongly rejected.

On January 2, 2009, we issued an order for accelerated briefing by the Franken campaign and the Secretary of State. We further ordered the counties of Hennepin, Ramsey, Stearns, Pipestone, Anoka, Sherburne, and St. Louis to inform the court by 9:00 a.m. on Saturday, January 3, as to: (1) whether local election officials, pursuant to our orders, considered the additional rejected absentee ballot envelopes identified by either the Coleman or Franken campaign committees; and (2) if local election officials did not consider such ballot envelopes, the reason or reasons why they did not do so. The court received a response from each of the identified counties, as well as from Rice and Norman counties, from the Franken campaign, and from the Secretary of State. On January 3, petitioners served and filed a motion for leave to file a reply brief and supporting affidavit; the Franken campaign served and filed a motion for leave to file a surreply brief and supporting documentation if petitioners' reply brief was allowed.

The Minnesota legislature has established a two-step statutory procedure for resolving elections, such as this one, in which the difference in the number of votes cast for the candidates is less than one-half of one percent. First, the ballots cast in the election are subject to an automatic recount under Minn.Stat. § 204C.35, subd. 1 (2006). The purpose of the recount is to manually count the undisputed ballots lawfully cast in the election. Second, following the completion of the recount, either party may file an election contest under Minn.Stat. ch. 209 (2006). The purpose of an election contest is to resolve in a judicial forum disputes over, among other things, who received the largest number of votes legally cast in the election. Minn.Stat. § 209.02, subd. 1 (2006).

As with the petition for emergency relief that was the subject of our December 18 order, the threshold question before us in this motion is whether disputes over rejected absentee ballots can be resolved in this automatic recount proceeding, or whether they must await an election contest proceeding. In our December 18 order, we concluded that because county canvassing boards had already reported the results of their canvasses, county boards could not amend their results except for "obvious errors in the counting or recording of the votes." Minn.Stat. §§ 204C.38, .39 (2006). We further concluded, based on the plain meaning of the statutory language, that the improper rejection of absentee ballots is not within the scope of "obvious errors in the counting or recording of votes" under section 204C38 or .39. The underlying reason for this conclusion is that the statute limits "obvious errors" to counting and recording errors, and not disputes over the validity of particular ballots. We therefore declined to reach the merits of the campaigns' respective positions on whether absentee ballots had been properly or improperly rejected.

Separately, we observed that, where election officials and the parties agree that an absentee ballot was improperly rejected, correction of that error should not have to await an election contest. We therefore ordered that any absentee ballot envelope that local election officials and the candidates agree was rejected in error should be opened and its ballot counted, subject to challenge by either candidate. In doing so, we implicitly recognized that any agreement among the parties was voluntary and, absent such an agreement, resolution of those disputed ballots would need to await an election contest proceeding.

The record before us with respect to petitioners' motion demonstrates that local election officials have acted diligently and in accordance with our orders, and together with the candidates have agreed upon more than 900 rejected absentee ballots, which have now been opened and counted by the Secretary of State's office. The Coleman campaign contends that there are 654 ballots, in addition to those identified by local election officials, that should be examined, but the Franken campaign disagrees. The Franken campaign has itself identified additional ballots that it contends may have been rejected in error, but the Coleman campaign disagrees. We take no position on the merits of either campaign's contentions. Because the parties and the respective counties have not agreed as to any of these additional ballots, the merits of this dispute (and any other disputes with respect to absentee ballots) are the proper subjects of an election contest under Minn.Stat. ch. 209.

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Petitioners' motion be, and the same is, denied.

2. Petitioners' motion to accept their reply brief be, and the same is, denied as moot.

3. The motion of intervenor-respondents to strike the affidavit of James Langdon and to accept their surreply brief be, and the same is, denied as moot.

BY THE COURT

/s/Alan C. Page
Associate Justice

MAGNUSON, C.J., and ANDERSON, G. BARRY, J., took no part in the consideration or decision of this matter.